**LOUISVILLE BEDDING CO., Plaintiff,**

v.

**PERFECT FIT INDUSTRIES, INC., Defendant.**

**No. Civ.A. 98–560.**

United States District Court, W.D. Kentucky, Louisville Division.

July 23, 2001.

Janet P. Jakubowicz, Greenebaum Doll & McDonald, Louisville, KY, Hartwell P. Morse, III, Kara E.F. Cenar, Walter J. Kawula, Jr., Thomas L. Gemmell, Welsh & Katz, Chicago, IL, for Louisville Bedding Company, a Delaware Corporation.

James R. Higgins, Jr., James R. Robinson, Middleton & Reutlinger, Louisville, KY, Colleen M. Coyle, Akin, Gump, Strauss, Hauer & Feld, Washington, DC, Joel S. Goldhammer, Andrea T. Vavoneses, Jeffrey K. Sherwood, Akin, Gump, Strauss, Hauer & Feld, Philadelphia, PA, for Perfect Fit Industries, Inc., a Delaware Corporation, and Kennedy Covington Lobdell & Hickman, LLP.

## MEMORANDUM OPINION AND ORDER

COFFMAN, District Judge.

This matter is before the court upon the parties' *Markman* briefs (Record Nos. 109, 124, 127). A hearing was held before the court at Louisville on June 19–20, 2001. This hearing addressed the issues of claim interpretation remaining after this court accorded preclusive effect to Judge Charles R. Simpson's interpretation of the '322 patent's claims in the *Pillowtex* litigation.[1] Having reviewed the record and being otherwise sufficiently advised, the court will now rule on those issues.

### Background

The subject of this litigation is Louisville Bedding's United States Patent No. 5,249,322 ("the '322 patent"), which was issued on October 5, 1993, and is the third in a series of three patents. This patent covered the construction of a new type of mattress pad skirt, which was elasticized and attached to the mattress pad top in such a way as to make the stretch predominantly in the horizontal direction; the advantage was a more secure fit to the mattress, regardless of the mattress's perimeter size or thickness. The '322 patent has been the subject of previous litigation, including the aforementioned *Pillowtex* litigation as well as an action between the present parties, Louisville Bedding and Perfect Fit, in 1994, which resulted in a consent judgment. In the current action, Louisville Bedding accuses four Perfect

---

1. *Louisville Bedding Co. v. Pillowtex Corp.,* United States District Court for the Western District of Kentucky, Louisville Division, Civil Action No. C–94–0722–L–S ("the *Pillowtex* litigation").

Fit mattress pad product types of literally infringing the claims of the '322 patent. The plaintiff asserts literal infringement of independent claims 1, 11, and 34, and of independent method claims 21, 24, 27, 28, and 29.

As claim construction was not intended to be an exercise in redundancy, this court will confine its interpretation to the claims in which language is disputed and which comprised the parties' *Markman* presentations. Further, having already determined that Judge Simpson's claim interpretations of this patent in the *Pillowtex* litigation are to be given preclusive effect, this court will not address any attempted re-litigation by the plaintiff of the phrases he construed in product claims 1, 11, and 34 and method claim 28. Finally, it bears noting that the procedural posture of this case requires this court only to construe the disputed language in the claims; no dispositive motion is before the court, so that we need not address the ultimate issue of infringement or apply the claim constructions to the accused products.

### Analysis

■ The hearing on claim construction in this case followed fast on the heels of the collateral estoppel hearing; understandably, portions of both parties' presentations discussed issues which this court has determined are foreclosed by Judge Simpson's previous rulings.[2] Specifically, the parties focused heavily on the term "elastic material," as used in various claims of the patent.[3] While this court will not engage in re-litigation of this term or second-guess Judge Simpson's construc-

tion, some clarification of the necessary consequences of that ruling is in order.

Judge Simpson construed two phrases of the '322 patent claims in *Pillowtex*. The first is the phrase "elastic material attached to inelastic material in a plurality of spaced apart parallel lines of attachment," which appears in Claims 1, 11, and 28. Judge Simpson construed this phrase to require that the fitted mattress cover must have embodied in its skirt a configuration of spaced-apart, parallel lines of attached elastic material; that is, that the elastic material *itself* must be configured in spaced-apart, parallel lines of attachment. The second phrase Judge Simpson construed appears in Claim 34, in the language "rows of elongated elastic cords extending in a longitudinal direction of the skirt...." Judge Simpson construed this phrase to mean that the fitted mattress cover must have embodied in it a plurality of elastic cords incorporated into the skirt material in rows. He rejected Louisville Bedding's contentions that the rows could extend in "more or·less a straight line" (finding instead that "extending in a longitudinal direction of the skirt" limited the rows to straight lines), and that "rows" could mean "rows of stitches" (finding that the claim specifically described the configuration of the elongated elastic cords which are incorporated into a material).

■ Perfect Fit draws a number of conclusions from these rulings to which Louisville Bedding objects: specifically, that the "elastic material" must (1) take the form of strips, cords, yarns, threads,

---

**2.** The court notes that, as collateral estoppel is a one-way street, Perfect Fit, which was not a party to the Pillowtex litigation, is not precluded from attempting to re-litigate Judge Simpson's constructions.

**3.** Although Judge Simpson was construing only claims 1, 11, 28, and 34, he was well

aware of the effect that his interpretation of "elastic material" would have throughout the patent; he acknowledged that "[o]ur ruling with respect to these claims necessarily affects many other claims in the patent, insofar as our construction of the patent's terminology must be consistently applied throughout."

strings and like-shaped materials (i.e., must be elongated); (2) be the attaching mechanism itself, that is, must be stitched *into* (not onto) the inelastic fabric; and (3) be spaced apart substantially over the width of the sidewall. Perfect Fit correctly infers the first two of these conclusions from Judge Simpson's construction of the phrase "elastic material attached to inelastic material in a plurality of spaced apart parallel lines of attachment," as describing the configuration of the elastic material *itself,* rather than the points at which the elastic material is attached. Judge Simpson's use of the doctrine of claim differentiation to note that the "elastic material" contained in claims 1, 11 and 28 is not limited to the form of "elongated elastic cords" specified in Claim 34 is not inconsistent with Perfect Fit's assertion; the elastic material may take forms other than cords. But Judge Simpson's central construction, that the elastic material must take the described configuration—to be attached *in* spaced-apart, parallel lines of attachment—forecloses Louisville Bedding's assertion that the patent encompasses a continuous sheet of elastic material, at least to the extent that continuous sheet is not comprised of elastic strips, yarns, etc. which attach themselves in spaced-apart, parallel lines of attachment.[4] This preclusion is further supported by Judge Simpson's infringement analysis, in which he applied his construction to the product at issue in *Pillowtex.* He reasoned that "[t]he Lycra® yarns which represent the only possible material to constitute 'elastic cords' in the #4059

skirt material are woven into the fibrous base material in an interconnecting pattern of loops which travel in all directions throughout the material. There are simply no rows of elastic cords in Pillowtex's product." Further, Perfect Fit correctly notes that the use of the term "in" rather than "by" or "with" in the phrase "elastic material attached to inelastic material in a plurality of spaced apart parallel lines of attachment" requires an elastic sewn *into,* not *onto,* an inelastic material; thus, it is clear that the elastic material must itself be the attaching mechanism.

■ Perfect Fit's conclusion that the *Pillowtex* ruling requires the elastic material to be spaced apart substantially over the width of the sidewall is more tenuous. Judge Simpson upheld the Magistrate Judge's construction of the claims as requiring that "the elastic material attached to inelastic material be attached in lines that are separate from each other and not touching."[5] Louisville Bedding here offers a definition of "spaced apart" as "separate from each other and not touching"; Perfect Fit seeks to add "substantially over the width of the sidewall" to the "spaced apart" language in the claims which contain that phrase and in Claim 34, which recites "a plurality of rows of elongated elastic cords extending in a longitudinal direction of the skirt" without any mention of "spaced apart parallel lines of attachment." In its discussion of Claim 34 during its *Markman* presentation, Perfect Fit emphasized two functional requirements present in that claim: (1) that the

---

**4.** Though Judge Simpson did not explicitly reject the idea of a continuous sheet of elastic material, his construction of Claim 34 over the plaintiff's objections is telling; he states that this claim, which "contains the phrase 'rows of elongated elastic cords' .... specifically describes the configuration of the elongated elastic cords which are incorporated into a material. To suggest that the claim states otherwise solely on the basis that it arguably contemplates a woven fabric is unconvincing."

**5.** In so doing, Judge Simpson noted that "LBC does not contend that 'spaced apart' has other than its plain and ordinary meaning, to one skilled in the art or otherwise."

skirt "yieldably grip" the mattress to minimize shifting of the top panel and (2) that the cords allow the skirt to stretch in the longitudinal direction. Perfect Fit contends that these functional requirements would not be met unless the elastic cords are distributed substantially over the height of the skirt. Louisville Bedding contested this point, however, and further noted that the specification of the patent directs that "virtually any number of rows of elastic cords can be incorporated in the skirt." Given Judge Simpson's previous construction of claim 11, this court declines to interpret the term "spaced apart," where it appears in the claim language, as requiring anything more than that the elastic material attached in parallel lines be separate and not touching; similarly, we decline to read into claim 34 a requirement that the elastic cords recited therein be spaced substantially across the height of the sidewall.

Additionally, the parties dispute several terms in relation to the '322 patent's mention of "rows of gathers," "fold lines," and "generally parallel," in various claims.[6] Perfect Fit's contentions, to which Louisville Bedding objects, center around Claim 29's description of one step as "attaching to said piece of material elastic material for pulling said piece of material into a plurality of rows of gathers extending in a longitudinal direction of the skirt means and having fold lines running generally parallel to each other in said downward direction, perpendicular to said longitudinal direction." Perfect Fit again argues that the elastic material must extend substantially over the height of the sidewall, asserting that it would not otherwise accomplish its function of pulling the material into rows of gathers. Moreover, the defendant contends that (1) the rows of gathers must themselves be spaced substantially over the width of the skirt and (2) the rows of gathers must be straight and discrete (this latter contention focused on the term "generally," which precedes "parallel" but not "perpendicular" in the claim).

The court finds the language of Claim 29 to be unambiguous; therefore we decline to adopt the defendant's additions. There is no need to read into the claim language the requirement that the elastic material be spaced *substantially* over the height of the sidewall.[7] Additionally, the court accords "generally parallel" its plain meaning; in the context of gathers, there is no requirement that they be "mathematically" parallel, nor does the omission of "generally" from the notation that they are oriented perpendicularly to the longitudinal direction require the fold lines of the gathers to be *precisely* straight or mathematical.[8]

6. During Louisville Bedding's presentation, which preceded that of Perfect Fit, the plaintiff called attention to and took issue with various proposed interpretations of claim terms offered by the defendant in answers to interrogatories; rather than attempting to compose a glossary for every disputed word in the patent, the court will focus on the thrust of Perfect Fit's contentions in its actual presentation. This is in accordance with Judge Simpson's view of claim construction as ascertaining each element of a claim, as it exists in dynamic operation with all the other elements of the claim.

7. The specification, as noted by the plaintiff, states that *virtually* any number of rows of elastic cords may be used; if the defendant is concerned that this language will be construed to include a product which has only one such row, the concern is alleviated by requirement of rows (plural) of gathers which are perpendicular to the longitudinal direction of the skirt.

8. The defendant made much of the fact that the drawings of the patent show mathematically parallel fold lines. The court notes that this may be more a consequence of the medi-

Finally, the parties dispute the meaning of language contained in the method claims regarding when the elastic material contained in the skirt, which is being sewn onto the top panel, is allowed to relax. Perfect Fit contends that all of the method claims at issue here require that tension be maintained on a discrete section of the elastic cords until after that discrete section is attached to the top panel; Louisville Bedding asserts that Claims 24, 28 and 29 provide for some relaxation of the elastic material in the skirt before it is affixed to the top panel. This dispute is easily resolved by looking at the plain language of claims 24, 28 and 29. Claim 24 describes a method of making a fitted mattress cover which includes the steps of:

> progressively attaching the inelastic fabric skirt material to the peripheral edge of the mattress cover top panel while maintaining the tension on the inelastic skirt material to prevent the elastic material attached thereto from relaxing; and
>
> allowing the elastic material in a portion of the fabric skirt material being attached to the cover top panel to relax as the inelastic fabric skirt material is progressively attached to the cover top panel, thereby progressively forming gathers in the inelastic fabric skirt material as it is being attached to the top cover panel.

Claim 28 contains similar language,[9] while Claim 29 speaks of "attaching said skirt means to said top panel means about said peripheral edge thereof while maintaining tension on said skirt means and the elastic

material in a strained condition; and releasing said tension on said skirt means to allow the elastic material to relax and thereby form said plurality of rows of gathers."

Louisville Bedding contends that these claims provide for methods distinct from Claim 21, which specifies "allowing the elastic material to relax *after* the inelastic skirt fabric material is attached to the peripheral edge of the mattress cover top panel, thereby forming gathers in the inelastic fabric material" (emphasis added). This argument is not persuasive; while Claims 24, 28 and 29 do contain the phrase "progressively," they speak of the elastic material being allowed to relax as, not *before*, the skirt is attached to the top cover panel. Perfect Fit is correct in asserting that the method claims at issue here are limited to processes wherein the tension on the elastic in a particular portion of the skirt is maintained until after that portion is sewn to the top panel, as evidenced by the plain language of the claims.

**IT IS SO ORDERED**

---

um utilized for the illustration (presumably, a computer-generated graphic).

9. Claim 28 includes the steps of "progressively attaching the layer of fabric material to the peripheral edge of the mattress cover top panel ... while maintaining the tension on the fabric material to prevent the elastic material

attached thereto from relaxing; and allowing the elastic material being attached to the cover top panel to relax as the fabric layer is progressively attached to the cover top panel, thereby progressively forming gathers in the fabric layer as it is being attached to the cover panel."